IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| | : | |
| | : | |
| In Re SPECIAL PROCEEDINGS | : | Misc. No. 09-0198 (EGS) |
| | : | **UNDER SEAL** |
| | : | |

<u>MEMORANDUM OPINION</u>

On February 8, 2012, this Court issued a Memorandum Opinion
and Order denying two motions to permanently seal from public
disclosure the Report to the Honorable Emmet G. Sullivan of
Investigation Conducted Pursuant to the Court's April 7, 2009
Order ("Mr. Schuelke's Report" or "Report").  In that Order, the
Court provided the six attorneys who were the subject of Mr.
Schuelke's investigation ("subject attorneys") with the
opportunity to submit their comments related to the Report by no
later than March 8, 2012, and ordered Mr. Schuelke to file his
Report on the public docket on March 15, 2012, including any
submissions by the subject attorneys to be attached as addenda
to the Report.

Edward P. Sullivan, one of the subject attorneys, now moves
this Court to stay the February 8, 2012 Order pending an appeal
to the U.S. Court of Appeals for the District of Columbia
Circuit ("Motion to Stay").  He also moves to file his Notice of
Appeal and his Motion to Stay under seal. Senator Stevens's

attorneys oppose the motions, and Mr. Sullivan has filed a reply to thir opposition.

Upon consideration of the motions, opposition and reply thereto, and for the reasons discussed herein, the Court **DENIES** the Motion to Stay, and **GRANTS IN PART AND DENIES IN PART** the Motions to Seal. Mr. Sullivan's Memorandum in Support of his Motion to Stay and his Reply in Support of Motion to Stay shall remain sealed until Mr. Schuelke's Report is publicly filed on March 15, 2012. Mr. Sullivan's Notice of Appeal and Motion to Stay shall be posted on the public docket on Thursday, March 1, 2012.

I. **DISCUSSION**

A. **Motion to Stay**

1. **Standard of Review**

In determining whether to stay an order pending appeal, the Court considers the same four factors as it would in resolving a motion for a preliminary injunction: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, --, 129 S. Ct. 1749, 1761 (2009) (citations omitted); *see also Wash. Metro. Area Transit Comm'n*

2

*v. Holiday Tours*, 559 F.2d 841, 842, n.1, 843 (D.C. Cir. 1977). On a motion to stay, "it is the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985).

The four factors have typically been evaluated on a "sliding scale," whereby if the movant makes an unusually strong showing on one of the factors, then he does not necessarily have to make as strong a showing on another factor. *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (citing *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 360-61 (D.C. Cir. 1999)). While it is unclear whether the "sliding scale" is still controlling in light of the Supreme Court's decision in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), the Court need not decide that issue because Mr. Sullivan's request for a stay fails even under the less demanding "sliding scale" analysis of *Davenport*. *See Sherley*, 644 F.3d at 393.

   **2.   Analysis of the Four Factors Relevant to a Motion to Stay**

   a. <u>Likelihood of Success on the Merits</u>

Mr. Sullivan advances three arguments which, he asserts, "raise[] serious legal questions" related to his ability to demonstrate a likelihood of success on the merits. Mot. to Stay at 8, citing *Holiday Tours*, 559 F.2d at 844-45, *see also* Reply

at 5-6.  As an initial matter, the Court is not persuaded that
merely raising a "serious legal question" on the merits is
sufficient for Mr. Sullivan to obtain a stay based on this
factor.  Typically, a movant must show a likelihood of success
on the merits to achieve a stay.  It is only when the other
three factors tip sharply in the movant's favor that the
standard for success on the merits changes.  "An order
maintaining the status quo is appropriate when a serious legal
question is presented, when little if any harm will befall other
interested persons or the public and when denial of the order
would inflict irreparable injury on the movant."  *Holiday Tours*,
559 F.2d at 844; *see also Davis Pension Benefit Guar. Corp.*, 571
F.3d 1288, 1292 (D.C. Cir. 2009).  As discussed *infra*, Mr.
Sullivan has not met his burden as to the other three factors;
accordingly, the Court considers whether he has demonstrated
"probable success" on the merits.  *Id.* (quoting *Charlie's Girls,
Inc. v. Revlon, Inc.*, 483 F.2d 953, 54 (2d Cir. 1973)).

The legal arguments in Mr. Sullivan's Motion to Stay and
his Reply are identical to the arguments he asserted in his
Motion to Permanently Seal the Report, all of which the Court
carefully and thoroughly considered and ultimately rejected in
its February 8, 2012 Opinion.  In his Motion to Stay, Mr.
Sullivan has offered neither new argument nor new support for
his previously-raised arguments.  Presented with no new

information, authority, or analysis to persuade the Court to
reconsider its February 8, 2012 decision, the Court has no basis
to conclude that Mr. Sullivan has demonstrated a probability of
success on the merits.

The Court is likewise unpersuaded by Mr. Sullivan's claim
that the "unique circumstances" of this case present a "novel
and admittedly difficult legal question that weighs in favor of
a stay." Mot. to Stay at 9 (citing *Ctr. For Int'l Envtl. Law v.
Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22 (D.D.C.
2003)); *see also* Reply at 9. In its February 8, 2012 Opinion,
after a thorough analysis of the facts and the law, the Court
concluded that "the public has an overriding and compelling
right to access the Report, and that right is protected by the
First Amendment." February 8, 2012 Opinion, 2012 U.S. Dist.
LEXIS 15656, *14. Nowhere in its Opinion does the Court state
or indicate that the decision was a close call.

To the contrary, the Court found that Mr. Schuelke's Report
fits squarely within the category of criminal judicial
proceedings to which the First Amendment provides a clear and
long-standing public right of access. *Id.* *16 (collecting cases
finding a right of access to pre- and post-trial proceedings),
*18-22 (detailing public interest in, and access to, all aspects
of the *Stevens* proceedings), *24 (explaining that the Report
addresses the prosecutors' conduct throughout the investigation

and prosecution of Senator Stevens, and therefore "relates and pertains to the *Stevens* prosecution."). The Court likewise concluded that one of the core purposes of the First Amendment right of access – "monitoring prosecutorial or judicial misconduct" – compels public access to the Report. *Id.* *26 (quoting *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991)). Finally, the Court found that access to the Report would inform the public about still-unrevealed events in the *Stevens* case, shed light on this Court's decision not to initiate criminal contempt proceedings, aid public understanding of criminal trials, and safeguard against further prosecutorial misconduct. *Id.* *26-37.

After concluding that the First Amendment protects public access to the Report, the Court's February 8, 2012 Opinion went on to consider the opposing attorneys' argument – primarily advanced by Mr. Sullivan - that the investigation conducted by Mr. Schuelke was "substantially the same as a grand jury proceeding and should be bound by the same secrecy rules governing grand jury investigations." *Id.* *40 (quoting Mr. Sullivan's Motion to Permanently Seal Report at 6). The Court squarely rejected this argument, finding that Mr. Schuelke's investigation differed from a grand jury proceeding in many important respects, *id*. *47-48, and further finding that most reasons for grand jury secrecy, such as protecting witnesses

from intimidation and mitigating the risk that targets of investigation would flee, were not relevant to Mr. Schuelke's investigation. *Id.* *49-50. Finally, the Court concluded that under the circumstances of this case, any claimed prejudice to the subject attorneys from disclosure of the Report was significantly less than potential prejudice to unindicted targets of grand jury investigations. *Id.* *56-62 (explaining that the scope and subjects of Mr. Schuelke's investigation were publicized from the outset; the subject attorneys were represented during the investigation and presented defenses; their employer, the Department of Justice, is already aware of the information in the Report and continues to employ them; and any claimed prejudice is addressed by providing the opportunity for the subjects to submit comments and objections which will be attached as addenda to the published Report).

Finally, in its February 8, 2012 Opinion, the Court looked to *In re North*, 16 F.3d 1234 (D.C. Cir. 1994), in which the D.C. Circuit weighed whether to publicly release the Independent Counsel's report on the Iran-contra affair. Acknowledging the differences between this case and *North*, the Court nevertheless found the case "instructive" because it squarely addressed the propriety of releasing a report containing allegations of wrongdoing when those allegations would not be the subject of future criminal proceedings. *Id.* *62. The Court found that the

7

factors considered by the court in *North* "overwhelmingly weigh in favor of disclosure" of Mr. Schuelke's Report.  *Id.* *64, 65-70 (the subjects of investigation are publicly known; the Report addresses a trial about which much is known, and much is incorrectly known, therefore disclosure will help set the record straight; the Report will shed light on information which should be publicly available to facilitate understanding of the *Stevens* case in particular and prosecutorial misconduct in general.)

In short, while the specific circumstances of this case may be unusual, the application of those circumstances to controlling, well-established law do not present the degree of difficulty or novelty required to meet the movant's heavy burden to obtain a stay. [1]

b. Irreparable Harm

As discussed *supra*, Mr. Sullivan has not established a likelihood of success on the merits.  Accordingly, he must show

---

[1] It is significant that, as stated in the February 8, 2012 Opinion, the Department of Justice and one subject attorney raised no objection to the public release of the Report, and a second subject attorney agreed to its release.  February 8, 2012 Opinion at *9-10 (citations omitted).  Moreover, two other subject attorneys filed very brief objections to disclosure (one was two pages, the other was four) which contained little or no argument.  *Id.* *11, n.5 (citations omitted).  The absence of significant, legally-supported objection to disclosure from the Department of Justice and four of the six subject attorneys, all of whom were participants in a prosecution which, the Report concludes, was "permeated by the systematic concealment of significant exculpatory evidence," Mr. Schuelke's Report at 1, further weighs against Mr. Sullivan's claim that he is likely to succeed on the merits.

a high degree of irreparable harm to justify the granting of a
stay.  "Probability of success is inversely proportional to the
degree of irreparable injury evidenced. A stay may be granted
with either a high probability of success and some injury, or
vice versa." *Cuomo*, 772 F.2d at 974.  Moreover, to establish
irreparable harm, "[a] party moving for a stay is required to
demonstrate that the injury claimed is 'both certain and
great.'" *Id.* at 976 (quoting *Wisconsin Gas Co. v. FERC*, 758
F.2d 669, 674 (D.C. Cir. 1985).  Mr. Sullivan has not
established any irreparable harm, much less one that is "certain
and great."

   Mr. Sullivan claims that his professional reputation will
be irreparably harmed by publication of the Report.  This
argument is unavailing, especially in light of Mr. Sullivan's
own submissions and statements related to the Report.[2]  In his
Motion to Stay, Mr. Sullivan claims that "the Report correctly
exonerates [him], and accurately concludes that he was not on

---

[2]   As explained in the February 8, 2012 Opinion, any claimed
harm to the subjects' professional reputations flowing from the
release of the Report is speculative for a number of reasons,
including:  (1) the issues under investigation and the subjects'
identities have been known and widely publicized from the
outset; (2) the subjects work for the Department of Justice,
which conducted its own investigation into the same conduct and
which is already aware of the information in the Report; (3)
some of the subjects have themselves made statements to the
press regarding the investigation; and (4) the subjects will
have the opportunity to submit comments to the Report, and those
submissions will be attached as addenda and published
simultaneously with the Report.  Feb. 8, 2012 Opinion at *59-62.

the trial team, did not meaningfully participate in the
decisions and actions under review, and merely assisted his
veteran supervisors and the experienced attorneys on the trial
team in a limited, 'back office' role."  Mot. to Stay at 2,
citing Mr. Schuelke's Report at 3, 507.  Given Mr. Sullivan's
own characterizations of the Report, the Court cannot conclude
that Mr. Sullivan will be harmed at all – much less irreparably
so – by publication of a Report that he himself maintains
exonerates him.

Mr. Sullivan nevertheless argues that, regardless of his
own exoneration in the Report, he will be irreparably harmed
"through unwarranted association with the alleged conduct and
decision-making of" the other subject attorneys.  Mot. to Stay
at 6; *see also* Reply at 3-4.  Again, this argument is
unavailing.  For years, Mr. Sullivan has been widely identified
as one of the prosecutors responsible for the investigation and
prosecution of Senator Stevens.  Mr. Sullivan's name has been
associated with the other prosecutors, in an undifferentiated
fashion, in a case which has come "to symbolize the dangers of
an overzealous prosecution and the risks inherent when the
government does not abide by its discovery obligations."
February 8, 2012 Opinion at *35 (collecting citations).  To the
extent the Report exonerates Mr. Sullivan and distinguishes his
conduct from the other subject attorneys' as he claims,

publication of the Report would presumably help, not harm, his professional reputation.[3]  This is particularly true because the Court's February 8, 2012 Order provides him, as well as the other subject attorneys, with the "opportunity to submit comments on the Report.  These comments shall be published with the Report, to enable the public to consider the subject attorneys' comments simultaneously with the Report." February 8, 2012 Opinion at *62; *see also North*, 16 F.3d at 1237 (providing for the subjects of the Independent Counsel's Report to file comments on the Report, which would be appended to the Report and serve as "the final word on the merits of the [] investigation.").

Publication of the Report itself, which Mr. Sullivan maintains "exonerates" him, combined with his own, unedited comments which provide him with the opportunity to clarify events and/or further distance him from the misconduct "of others," cannot possibly comprise irreparable harm.  *See North*, 16 F.3d at 1241 (the subjects' "right of comment, both in the

---

[3]  Mr. Sullivan's Reply in Support of Motion to Stay underscores the Court's conclusion that he has not demonstrated irreparable harm.  His reply is replete with references to the Report which, he asserts, support the "indisputable determination[]" that Mr. Sullivan was not responsible for the misconduct in *Stevens*.  Reply at 1, *see also id.* at 3-4 (discussing Report's findings regarding Mr. Sullivan).  Mr. Sullivan's claim that, notwithstanding these clear conclusions, the public may "wrongly conclude that the Report's generalized criticism of the government . . . applies to Mr. Sullivan," Reply at 2, is insufficient to meet his high burden to show irreparable harm.

report and other fora, may do them more good than the order [denying publication] they seek from us.")

Deprived of his argument that release of the Report will irreparably harm his professional reputation, Mr. Sullivan is left only with his claim that a stay is justified because once the Report is released, with his comments, the appellate court will not be able to "unring the bell" on appeal.  Mot. to Stay at 7 (quoting *Maness v. Meyers*, 419 U.S. 449, 460 (1975)).  The Court is not persuaded that this argument is sufficient to warrant a stay in this case, where, as discussed throughout, the movant has not demonstrated a serious question on the merits, the balance of harms favors disclosure, and the public interest weighs heavily in support of release.[4]

---

[4]   The cases Mr. Sullivan cites are not to the contrary.  In *Providence Journal Co. v. FBI*, 595 F.2d 889 (1st Cir. 1979), the First Circuit stayed an order disclosing FBI documents regarding a wiretap to the plaintiff, a newspaper.  The court found that the movant established "serious legal questions" on the merits, and further found that "once the documents are surrendered . . . confidentiality will be lost for all time."  *Id.* at 890.  By contrast, the Court does not find Mr. Sullivan has established a serious legal question on the merits.  Moreover, as discussed throughout the February 8, 2012 Opinion, the existence of Mr. Schuelke's investigation, its scope, and its subjects have been widely publicized from the outset, and some of the subject attorneys, including Mr. Sullivan, have made statements to the press about the investigation.  *See* Feb. 8, 2012 Opinion at *60 (citations omitted).  The other cases cited by Mr. Sullivan are likewise distinguishable. *See Ctr. for Envtl. Law v. Office of the U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (concluding that the movant "made out a substantial case on the merits [in] an issue of first impression . . . [the] Court's decision centered on a novel and admittedly difficult legal

c. <u>Harm to Other Interested Parties</u>

Mr. Sullivan argues that no party will be harmed by a stay. The Court disagrees.   Senator Stevens's attorneys have persuasively argued that the Senator's family and former staff, colleagues and close friends, who suffered the effects of the prosecution along with him, have not been permitted to review the Report.   Opp'n to Motion for Stay Pending Appeal at 9. Moreover, one subject attorney "welcomes the release" of the Report.   *See* Brenda Morris Concurs with the Court's Intent, as Stated in Its November 21, 2011 Order, to Release the Full Report.   Accordingly, the Court finds the balance of harms tips in favor of disclosure.

d. <u>The Public Interest</u>

"The fourth and final factor to be considered by the Court when analyzing the . . . request for a stay and injunction is where the public interest lies.   The public interest is a uniquely important consideration in evaluating a request for [interim relief]."   *Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68, 77 (D.D.C. 2008) (citations omitted).   As this Court has

---

question." (internal citations omitted)); *People for Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 174, 177 (D.D.C. 2007) (opposing party consented to stay).   The final case cited by movant, *Maness v. Meyers*, does not concern a stay pending appeal; it addresses whether an attorney is subject to contempt by advising his client to resist compliance with a court order to produce documents where production would implicate his Fifth Amendment privilege against self-incrimination.

repeatedly stated over the course of this case, the public has a compelling interest in the *Stevens* case, and that interest weighs overwhelmingly in favor of the prompt release of the Report.  *See, e.g.,* Transcript of Hearing 46:7-11, *U.S. v. Stevens*, Case 08-cr-231 (April 7, 2009) ("[T]he events and allegations in this case are too serious and too numerous to leave to an internal investigation that has no outside accountability.  The court has an independent obligation to ensure that any misconduct is fully investigated and addressed in an appropriate public forum."); *see also* Feb. 8, 2012 Opinion at *34-35 (collecting Supreme Court authority in support of public access to criminal trials in order to facilitate public understanding of the process and safeguard against prosecutorial misconduct).  In this case in particular, which involved the trial of a sitting United States Senator and which has "come []
to symbolize the dangers of an overzealous prosecution . . . and [] has also been credited with changing the way other courts, prosecutors, and defense counsel approach discovery in criminal cases," February 8, 2012 Opinion *35-36 (collecting citations), the public interest in timely disclosure of the results of Mr. Schuelke's investigation is evidenced by the public statements of members of the United States Senate, the national media, and the Attorney General himself.  Press Release, Senator Chuck Grassley, *Distrust of the Justice Dept., Televising Supreme*

*Court Proceedings*, (Feb. 9, 2012)

http://www.grassley.senate.gov/news/Article.cfm?customel_dataPag
eID_1502=38980 (last visited Feb, 27, 2012) ("[T]he public has a
right to know what the special investigator found and how
pervasive the misconduct was inside the Public Integrity Unit at
the Justice Department."); Editorial, *Release the Stevens
Report*, THE NEW YORK TIMES, (Feb. 7, 2012),

http://www.nytimes.com/2012/02/08/opinion/release-the-ted-
stevens-report.html?scp=1&sq=Ted%20Stevens&st=Search (last
visited Feb. 26, 2012); *Oversight of the U.S. Dep't of Justice:
Hearing Before the Senate Judiciary Comm.*, Webcast at 66:00:66-
10 (Nov. 8, 2011),

http://www.judiciary.senate.gov/hearings/hearing.cfm?id=9b6937d5
e931a0b792d258d9b32d21a8 (last visited Feb. 26, 2012),
(statement of Attorney General Holder that "I want to share as
much of [the Department of Justice report on its investigation
of the *Stevens* prosecution] as we possibly can given the very
public nature of that matter and the very public nature of the
decision I made to dismiss the case[.]")

Mr. Sullivan does not acknowledge or attempt to dispute
these compelling interests.  Rather, he argues that there is "a
substantial public interest in ensuring that a prosecutor does
not accuse uncharged individuals of wrongdoing."  Mot. to Stay
at 11.  As discussed in the Irreparable Harm section *supra*, this

argument is unavailing, especially in view of Mr. Sullivan's claim that the Report "correctly exonerates" and "rightfully clears" his name. *Id.* at 2, 5.   The only other argument Mr. Sullivan asserts in support of public interest in further delay is "the right to effective appellate review." *Id.* at 11.   But, again, as discussed *supra*, this unsupported assertion does not erase or negate the stringent requirements for a stay, none of which have been met in this case.   It also does not trump the overwhelming public interest in, and right to, the results of Mr. Schuelke's investigation, as detailed in his Report.

For the foregoing reasons, the Court will **DENY** movant's Motion to Stay Pending Appeal.

### B.   Mr. Sullivan's Motions to Seal His Motion to Stay and His Notice of Appeal

In addition to his Motion to Stay Pending Appeal, Mr. Sullivan has moved the Court to file the Motion to Stay, as well as his Notice of Appeal, under seal.   Mr. Sullivan cites no authority for his requested relief, which would hide the fact of appeal and all subsequent litigation in this case from the public record.   Therefore, with the exception of his Memorandum and his Reply in Support of Motion to Stay, which reference the

contents of the Report, Mr. Sullivan's motions to seal will be **DENIED**.[5]

As recent decisions in this case have made clear, judicial proceedings in the United States are presumptively open to the public.  Proceedings, records, and the identities of litigants are withheld from the public only when the movant overcomes strong presumptions in favor of disclosure.  *See, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 589-93 (1980) (presumption of public access to criminal cases, overcome only by overriding interest that closure is essential to preserve higher values and narrowly tailored to serve that interest); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) ("[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *U.S. v. Microsoft Corp*, 56 F.3d 1448, 1464 (D.C. Cir. 1995) (courts grant "rare dispensation" of anonymity sparingly); *Coe v. U.S. Dist. Court for Colorado*, 676 F.2d 411, 415-16 (10th Cir. 1982) (courts generally allow anonymity to preserve privacy only in highly personal matters such as abortion and welfare of children, or when identification poses risk of physical or mental harm;

---

[5] In accordance with the Court's Opinion of February 8, 2012, all pleadings related to Mr. Schuelke's Report will be unsealed on March 15, 2012, when the Report is placed on the public docket. Feb. 8, 2012 Opinion at *72.

anonymity not permitted in an action involving a litigant's future professional and economic life.).

In this case, the Court has sealed only those pleadings and portions of pleadings which would reveal the contents of the Report.[6]  The subjects' identities have never been sealed; to the contrary, they have been widely publicized from the outset of the investigation.  Mr. Sullivan's Notice of Appeal contains no information regarding the content of the Report, nor does his Motion to Stay.  Accordingly, in the absence of any argument by Mr. Sullivan to overcome the presumption of openness, his motions to seal the Notice of Appeal and Motion to Stay are **DENIED.**  The Clerk of the Court is directed to post the Notice of Appeal and Motion to Stay on the public docket on March 1, 2012.  Because his Memorandum in Support of Motion to Stay and his Reply in Support of Motion to Stay reference the content of the Report, the Court will **GRANT** Mr. Sullivan's motion to file

---

[6] Mr. Sullivan points out that the Court redacted from the February 8, 2012 Opinion the identities of the attorneys who filed motions, notices or memoranda in response to the Court's November 21, 2011 Order announcing its intention to publish the Report and providing the attorneys an opportunity to file pleadings in response to that Order.  Mot. for Leave to File Under Seal at 1-2.  The Court made these redactions in order to avoid the possibility of linking an attorney with a substantive argument regarding the Report, thereby inadvertently revealing that content prematurely.  Mr. Sullivan nowhere explains, because he cannot, how these limited redactions in an otherwise public opinion and order translate into a right to complete anonymity, or a right to withhold all future litigation in this case from the public record.

those memoranda under seal.   In accordance with the Court's February 8, 2012 Opinion and Order, all pleadings related to Mr. Schuelke's Report shall be unsealed when the Report is published on March 15, 2012, and Mr. Sullivan's Memorandum in Support of a Stay shall likewise be unsealed at that time.

**II. CONCLUSION**

For the foregoing reasons, Mr. Sullivan's Motion to Stay is **DENIED**, and his motions to file under seal are **GRANTED IN PART AND DENIED IN PART**.

An appropriate Order accompanies this Memorandum Opinion.

Signed:   **Emmet G. Sullivan**
          **United States District Judge**
          **February 27, 2012**