# ADDENDUM

## Subject Attorneys' Comments and/or Objections to the Report Pursuant to the Court's Order, dated February 8, 2012

### Exhibit 6

### WILLIAM M. WELCH III

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
                              )
IN RE SPECIAL PROCEEDINGS     )     Misc. No. 09-00198 (EGS)
                              )
                              )
_____)

COMMENTS OF WILLIAM M. WELCH II
IN RESPONSE TO REPORT TO THE HONORABLE EMMET G. SULLIVAN OF INVESTIGATION
CONDUCTED PURSUANT TO THE COURT'S ORDER, DATED APRIL 7, 2009

William M. Welch II, through his undersigned counsel and pursuant to the Court's February 8, 2012 order (the "Order") in this matter, hereby submits the following comments to be filed, on March 15, 2012, as an addendum to the Report to the Honorable Emmet G. Sullivan of Investigation conducted pursuant to the Court's April 7, 2009 order (the "Report").

As to Mr. Welch, the Report found the following:

> Since the Office of the [Assistant Attorney General of the Criminal Division] also actively managed the conduct of the prosecution in matters ranging from review and approval of pleadings, opening statements and closing arguments and witness examination assignments to the seating of government counsel in the courtroom, Mr. Welch perceived himself effectively to have been eliminated from the "chain of command." Moreover, since his principal deputy was now fully otherwise occupied, the supervision of the balance of the Public Integrity Section's docket fell to him. The net result was that Mr. Welch directly supervised the conduct of the prosecution only when discrete matters were brought to his attention after controversies arose. To his credit, on each occasion that *Brady/Giglio* disclosure issues were brought to him for decision, he directed that disclosure be made.

(Report at 506-07.) Examples of the occasions on which Mr. Welch directed disclosure or made the disclosure himself when *Brady/Giglio* issues were presented to him included the following:

- September 8, 2008, when Mr. Welch directed the disclosure of a prosecutor's notes of an interview with Bambi Tyree in 2004 (Report at 325); and

- October 16, 2008, when Mr. Welch provided an Anchorage Police Department file that included an FBI 302 of Tyree's 2004 interview, to the defense (Report at 322, 344-46).

As noted in the Report, the then-Acting Assistant Attorney General and then-Principal Deputy for the Criminal Division ("the Front Office") exercised an unusual degree of supervision over the *Stevens* prosecution. In addition to the examples of micro-management cited in the section of the Report quoted above, the Front Office's decision to add the Principal Deputy of Public Integrity as the lead prosecutor on the *Stevens* team just days before the indictment despite Mr. Welch's objections, the degree of direct communication that the lead prosecutor had with the Front Office, and the pre-trial decision -- made without consulting Mr. Welch -- not to produce 302s as possible *Jencks* material support the Report's conclusion that Mr. Welch's position in the chain of command was at times undermined. (Report at 4, 506; Welch Dep., Feb. 5, 2010 at 277-80.)

Notwithstanding the degree to which the traditional chain of command was altered, in the weeks prior to the *Stevens* indictment and throughout the trial, Mr. Welch spoke with members of the prosecution team about discovery and encouraged them to avoid discovery disputes. Those occasions included the following:

- in July 2008, prior to the *Stevens* indictment, when Mr. Welch was told on more than one occasion that discovery was ready to be produced (Report at 49);

- on July 17, 2008, when Mr. Welch asked a member of the prosecution team to produce the FBI 302s of a key witness's interviews to test the team's discovery readiness and, about one hour later, received a disk that purportedly contained all of the 302s for that witness (Report at 49);

- on August 1, 2008, after learning that FBI 302s would not be produced as possible *Jencks* material, when Mr. Welch cautioned a senior member of the prosecution team that the government should not be "viewed as holding

anything back," particularly in such a prominent case (Deposition of William Welch in *In Re Special Proceedings* ("Welch Dep."), Jan. 13, 2010 at 110, 166);

- in August and September 2008, when Mr. Welch received assurances on more than one occasion from a senior member of the prosecution team that the team had everything under control and, consistent with those statements, Mr. Welch observed that the prosecution team was meeting its deadlines, had been scheduling and interviewing potential trial witnesses, and appeared to be on track for the start of trial (Welch. Dep., Feb. 5, 2010 at 355);

- in late August and September 2008, when Mr. Welch spoke with members of the prosecution team individually and collectively about discovery and encouraged them to engage in liberal discovery, including for example, production of photographic metadata, Title III surveillance logs, and grand jury testimony of particular witnesses (Welch Dep., Jan. 13, 2010 at 111-12, 151);

- in September 2008, when Mr. Welch believed that the prosecution team had been adhering to, and would continue to adhere to, its *Brady/Giglio* obligations, based upon the guidance offered by Mr. Welch, oral representations made to him, written representations made in discovery motions filed in the *Stevens* case, and representations made in open court that discovery provided had been "generous" and the prosecution team understood its *Brady* obligations under *Safavian* (Welch Dep., Jan. 13, 2010 at 151, 166; Welch Dep., Feb. 5, 2010 at 366); and

- on October 1, 2008, when members of the prosecution team consulted Mr. Welch about previously undisclosed information in a FBI 302 that had been produced in redacted form ("the Pluta 302"), Mr. Welch reviewed the information and told the team that it was *Brady* material that needed to be produced to the defense (Welch Dep., Jan. 13, 2010 at 118).

Mr. Welch's practice throughout his career has been and continues to be to provide defendants with the fullest possible discovery, beyond constitutional requirements, whenever consistent with preservation of the government's legitimate interests. When discovery issues that Mr. Welch believed at the time were isolated in nature were presented to him during the *Stevens* case, Mr. Welch's guidance was consistent with his longstanding practice.

In addition, on March 27, 2009, Mr. Welch learned for the first time about notes and emails relating to two previously undisclosed interviews in April 2008 with Bill Allen, a key

- 3 -

witness. (Report at 453.) Upon reviewing the notes and emails, Mr. Welch immediately concluded that the materials contained *Brady* information that should have been disclosed, and he told the then-Acting Assistant Attorney General of the Criminal Division ("AAG") that DOJ should consider dismissing the indictment. On March 31, 2009, when Mr. Welch learned that the Attorney General had decided to dismiss the indictment with prejudice and was asked by the AAG for his position on that decision, Mr. Welch voiced his support for that decision on two separate occasions.

The official record of this matter should also include a brief word about Mr. Welch's career with the U.S. Department of Justice. Mr. Welch joined the Justice Department through the Honors Program in September 1989. He has spent his entire career as a lawyer at the Department. At the time of the *Stevens* prosecution, Mr. Welch had been a prosecutor for nineteen years and had received numerous awards, including but not limited to the Superior Performance Award as an Assistant United States Attorney in 1994, 2001, and 2006. Mr. Welch's successful stewardship of the Department's Public Integrity Section included supervision of approximately 30 federal prosecutors handling some of the Department's most sensitive and important cases, such as the continuing Abramoff probe that netted twenty guilty pleas and verdicts, the indictment and eventual guilty plea of former United States District Judge Samuel Kent, the Department's cooperation in the eventual impeachment of former United States District Judge Thomas Porteous, and oversight of one of the most successful presidential elections from an elections crime and fraud perspective.

Mr. Welch supports the public release of the Report, which will ensure that the public record in this matter is complete and accurate with regard to the Report's findings and conclusions as to Mr. Welch. Finally, in addition to cooperating fully with the court-ordered

investigation culminating in the Report, Mr. Welch also cooperated fully with an investigation by the U.S. Department of Justice's Office of Responsibility ("OPR") into allegations of misconduct in the prosecution of *United States v. Stevens*, Crim. No. 08-231 (D.D.C.)(EGS). By letter dated August 16, 2011, OPR notified Mr. Welch of its conclusion that he did not commit professional misconduct or exercise poor judgment in the *Stevens* matter. *See* Exhibit A. Mr. Welch also supports and looks forward to the release of OPR's investigative report, so that the details supporting OPR's conclusion also become part of the public record.

Respectfully submitted,

/s/ William W. Taylor

William W. Taylor III (D.C. Bar No. 84194)
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W.
Washington, D.C. 20036
Phone: (202) 778-1800
Fax:    (202) 822-8106
Email: wwtaylor@zuckerman.com

/s/ Mark H. Lynch

Mark H. Lynch (D.C. Bar No. 193110)
Simone E. Ross (D.C. Bar No. 442149)
**COVINGTON & BURLING LLP**
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 662-5544
Fax:    (202) 778-5544
Email: mlynch@cov.com
           sross@cov.com

Date:   March 8, 2012          **Counsel for William M. Welch II**

# EXHIBIT A



**U.S. Department of Justice**

Office of Professional Responsibility

*950 Pennsylvania Ave. N.W. Room 3266*
*Washington, D.C. 20530*

AUG 1 6 2011

**CONFIDENTIAL**

Simone E. Ross
Covington & Burling LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2401

Dear Ms. Ross:

    The Office of Professional Responsibility has completed its investigation into allegations of professional misconduct by Department of Justice attorneys, including your client, William M. Welch II, in the prosecution of *United States v. Theodore F. Stevens*, Crim. No. 08-231 (D.D.C.)(EGS). Based upon the results of our investigation, we concluded that Mr. Welch did not commit professional misconduct or exercise poor judgment in the matter.

    If you require further information concerning the results of our investigation, please contact Criminal Division Assistant Attorney General Lanny A. Breuer.

    Thank you for your cooperation with our investigation.

                                         Sincerely,

                                          Raymond C. (Neil) Hurley
                                          Acting Counsel for this matter

cc:    Lanny A. Breuer
        Assistant Attorney General
        Criminal Division

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2012, I caused the original, four paper copies, and one electronic copy of the foregoing Comments to be delivered by hand to Henry F. Schuelke III, Esq. and William B. Shields, Esq., at the following:

>Henry F. Schuelke III, Esq.
>William B. Shields, Esq.
>**Janis, Schuelke & Wechsler**
>1728 Massachusetts Avenue, N.W.
>Washington, D.C. 20036
>hfschuelke@janisschuelke.com
>wbshields@janisschuelke.com

*/s/ Simone E. Ross*
Simone E. Ross